The London Assurance Corporation, Appellant, *v.* Joseph W. Thompson, Respondent.

*Insurance — construction of a contract of reinsurance — representation by the insurer to the reinsurer as to the limited time that the insured property would remain in the place covered by the reinsurance — when it will not justify a reformation of the contract.*

Where an insurer, who has issued a policy which insures property of a firm, wherever located, from the time when bills of lading are signed for the goods until the goods have been laden upon vessels or lighters for shipment, negotiates a written contract for the reinsurance of a proportion of the risk, covering naval stores in barrels while awaiting shipment "in or on the warehouses and * or sheds" of the firm at Brunswick, Georgia, the reinsurer is not liable for a loss of such stores burned in an open yard adjoining such warehouses and sheds.

Proof that the insurer, as an inducement to the making of the reinsurance contract, stated to the reinsurer that the course of business was such that goods did not remain awaiting shipment longer than a week, and that as the reinsurer would receive five cents per $100 on each shipment he would receive a much larger premium than one based upon the average amount of goods always in the yard, although the reinsurance contract executed by the reinsurer, after he had full opportunity to examine it, contained no provision limiting the liability of the reinsurer to goods which were awaiting shipment less than a week, does not, in the absence of proof of fraud or mistake, justify a reformation of the reinsurance contract so as to limit the liability of the reinsurer to goods awaiting shipment "not exceeding one week."

Appeal by the plaintiff, The London Assurance Corporation, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of March, 1897, upon the report of a referee.

*W. W. MacFarland*, for the appellant.

*Michael H. Cardozo*, for the respondent.

Ingraham, J.:

The plaintiff, an insurance company doing business in the United States, issued and delivered to Patterson, Downing & Co., merchants, a policy of insurance by which it insured a three-fifths interest in all goods of said assured "at and from interior points in the United States to Baltimore, Norfolk, Wilmington, N. C., Charleston,

---

*Sic.

Savannah, Brunswick, Fernandina, Carabelle and other ports of shipment on the Atlantic or gulf coasts of the United States, covering all risks by railroads and *or other inland conveyances and in warehouses, *yards or elsewhere* from the time bills of lading are signed for the goods until the same shall have been laden on board vessel or lighter at such ports of shipment." The plaintiff, being under the obligation of this policy, applied to various underwriters engaged in the insurance business to reinsure a portion of its risks, and the defendant issued a policy whereby he with his associates agreed to reinsure the plaintiff to the extent of a one-sixteenth interest on the fire risks on naval stores, viz., "rosin, turpentine, etc., in barrels, while waiting shipment in or on the warehouses, and *or sheds of Downing & Co., at Brunswick, Georgia, and insured under policies issued by the London Assurance Corporation, Marine Branch."

The complaint alleges that "on the second day of April, 1896, while the said policy was in full force, a fire occurred by which a large part of the property insured was destroyed. Thereafter the amount for which the plaintiff was liable to the insured under the said policy was ascertained and adjusted at the sum of $47,270.56, which the plaintiff paid on or before May 27th, 1896." This action is brought to recover the defendant's proportion of such loss.

The defense insisted upon by the defendant was that, under the terms of the policy of reinsurance, the risk assumed by this defendant only attached to such naval stores as were, while awaiting shipment, "in or on the warehouses and *or sheds of Downing & Co., at Brunswick, Georgia," and that the evidence shows that the naval stores destroyed by fire were not in or on the sheds or warehouses, but in an open lot or yard adjoining such sheds or warehouses, and the defendant also, by way of counterclaim, asks to have the policy of insurance reformed by inserting after the words "while waiting shipment," in the policy, the words "not exceeding one week." The referee held in favor of the defendant both on the defense and the counterclaim, and directed judgment making such reformation in the policy and dismissing the complaint. From that judgment the plaintiff appeals.

We think the learned referee erred in directing the reformation of this policy. To sustain the counterclaim, it was proved that one

* *Sic.*

Henry Despard, representing the plaintiff, applied to the defendant for reinsurance. Upon objection being made by the defendant that the rate was too small, he (Despard) said: "The goods are there waiting shipment, and will be there from one to five days, not exceeding a week at any one time, and you are to receive five cents per $100 for each shipment while it is there." The officer of the defendant then said to Despard: "The tariff rate was a very high one," to which Despard replied: "You will receive by taking the insurance this way a much larger premium than by taking a specific yearly policy, as the shipments through the month will be very large, and you will receive at the end of each month the five cents per one hundred dollars for each shipment that goes through." The defendant, at a subsequent interview, accepted the application for reinsurance, and, at the interview at which it was accepted, Despard left the form which had been prepared by the plaintiff and which was subsequently made a part of the policy, but which contained no provision limiting the liability of the defendant as to the time that goods covered by the insurance were to remain in the warehouses, sheds or yard of the assured. This form was prepared by the plaintiff as the form of contract required by it, and was accepted by the defendant as the proper contract to make as the result of the negotiations between the parties. There was no evidence that it was the intention of the plaintiff to limit its right to recover, under the reinsurance contract, to the goods that had remained in the yards awaiting shipment for a space of time not exceeding one week. On the contrary, there was the submission of a proposed contract in which there was no mention of any such limitation, establishing, we think, that the contract which the plaintiff had in mind, and which it desired to make, was one without such limitation. To induce the defendant to make such a contract, it was stated to him that the course of business was such that, as a fact, the goods did not remain awaiting shipment for a period longer than a week, and that, as the goods were constantly being shipped from the yard, remaining there usually but a few days, and as he would be entitled to receive a premium upon all goods that passed through the yard, he would, in the aggregate, receive a much larger premium than if such premium was based upon the average amount of goods that was always in

the yard. It would not follow from what was said that not a single barrel of rosin or turpentine remained in the yard for a period greater than a week, but that the course of business was such that goods were being constantly received and shipped, and thus the same goods would not remain in the yard for a period exceeding a week, and that, as the premium to be paid the defendant was to be upon the aggregate amount actually received and shipped during each month, the premium to be paid would be much larger than by taking a specific yearly policy, fixing an amount which would probably cover the value of the property that would be in the yard at any one time. It was this consideration that induced the defendant to accept the risk, and when the form of the contract was submitted to the defendant by the plaintiff's agent it was taken by the defendant and incorporated in the policy which was prepared by its officers and delivered to the defendant.

There is here no evidence to justify a finding that there was any mutual mistake as to what the policy itself contained; certainly none to show that the plaintiff understood· that the contract was to contain any such limitation as was sought to be written into it. Nor is there any evidence to show that the defendant understood that this limitation was in the contract, or that the contract thus prepared contained any provision limiting the insurance to property which had been for a period less than a week in the warehouses or sheds of the assured under the original policy. The utmost that could be said was that the defendant had been induced to accept a policy, general in its terms, upon a statement that by the method of business adopted by the assured under the original policy issued by the plaintiff there would not be an accumulation of goods in the yard; and there is no evidence to show that at the time the policy was issued, or prior to that time, this representation was not true. The referee in his opinion states the rule as follows: "Where, through fraud or accident, a written agreement varies from what the parties intended, or where, through mistake, it fails to express the intention of the parties, equity will decree its reformation. * * * But the party seeking the reformation must establish the fraud or accident or mutual mistake by evidence that is 'clear, positive and convincing.'" We agree with this statement of the law, but think the evidence failed to prove that, through fraud or accident, the

agreement varied from what the parties intended, or failed to express the intention of the parties. As there stated, there is certainly no evidence to show that it failed to express the intention of the plaintiff; and there was no evidence of any fraud by which the defendant was induced to believe that the form as tendered by the plaintiff did express a contract different from that which was actually executed and delivered. It was at no time stated by either of the contracting parties that the liability of the defendant should be limited to goods which remained in these warehouses or sheds for a period less than a week. That was not the proposition made on behalf of the plaintiff to the defendant; nor was it the proposition that the defendant accepted. The proposition was: "I want to get a line of reinsurance for the London Assurance Corporation on naval stores at Brunswick, Georgia;" and to induce the defendant to give such reinsurance a course of business was stated from which it could be inferred that there would not be a large accumulation of goods which would be covered by the policy to be issued; but it was nowhere stated that the contract to be made should be limited to goods that had been on storage for a. period less than a week; and when this form of contract was delivered to the defendant after full opportunity to examine it he had incorporated it in the contract which was executed and delivered to the plaintiff. As was said by the Court of Appeals in *Whittemore* v. *Farrington* (76 N. Y. 458): "There was no mistake as to the character of the deed which was tendered and accepted. * * * An instrument or covenant, the nature and contents of which are fully comprehended by both parties at the time of its execution, cannot be altered in its terms by the court."

We think, therefore, that the judgment reforming the policy was wrong, and to that extent the judgment must be reversed.

We think, however, that the learned referee was right in holding that, under the proof, the policy issued by the defendant never attached to the goods destroyed by fire. Under the policy issued by the plaintiff, it insured Patterson, Downing & Co. against loss, "in all goods, their own property, or in which they may be interested as part owners or agents * * *" at and from interior points in the United States, to various cities upon the seaboard, which included the city of Brunswick. The policy, then continuing, provided that

this insurance covered "all risks by railroads and *or other inland conveyances and in warehouses, yards or elsewhere, from the time bills of lading are signed for the goods until the same shall have been laden on board vessel or lighter at such ports of shipment." It will thus be seen that the plaintiff had become insurer of all goods of Patterson, Downing & Co., wherever located, from the time bills of lading were signed for the goods until the same should have been laden on board vessels or lighters at the ports of shipment. Thus, while goods were in transit upon railroads to the ports of shipment, while in warehouse or yard, until laden upon vessels or lighters for shipment, the plaintiff's liability continued. The application to the defendant was to reinsure a portion of this risk, and under the policy which it thus proposed to the defendant it was agreed that the policy would attach upon naval stores in barrels while awaiting shipment "in or on the warehouses and *or sheds of Downing & Co. at Brunswick, Georgia." The defendant's liability was thus to attach, under the terms of the policy, upon goods awaiting shipment at Brunswick, Georgia, and when such goods had been placed in or on a warehouse, or in or on a shed of Downing & Co., Downing & Co. being a corporation owning certain premises at Brunswick which were used for the storing of these naval stores.

The plaintiff was liable while the goods were in the yards as well as when upon the cars, but the liability of defendant was limited to the naval stores in or on the warehouses or sheds. The parties have made their contract, and by the terms of this contract the liability of the defendant is to be determined. It is quite clear that this policy would not attach to naval stores while laden upon railroad cars waiting to be discharged into warehouses of Downing & Co.

It is equally true that the policy would not attach while the goods were in the yard or before they were actually put in the warehouses or sheds provided by Downing & Co. for that purpose. It is also clear that as soon as any naval stores had been taken out of the sheds or warehouses for the purpose of being placed upon vessels, or for any other purpose, this policy would cease to cover such goods. In other words, by the express provisions of the contract the liability of the defendant was limited to an insurance upon naval stores when in such sheds or warehouses, and not to naval stores upon the trains

---

\* *Sic.*

or in the yards, or being shipped upon vessels. If there was any ambiguity in the language used, or any doubt as to what goods were covered by this policy, we could ascertain the intention of the parties by considering the method of transacting business, and all the circumstances surrounding the transaction, but where, as in this case, the terms of the policy are clear and explicit, and the liability of the plaintiff is limited to goods stored in a particular warehouse or shed, the court is not at liberty to enlarge the liability thus expressly restricted, because of a presumed intention in procuring the reinsurance. By the terms of the policy the defendant was to be liable to the extent of a one-sixteenth interest with the plaintiff " as described." By the evidence it appears that none of the rosin destroyed by fire was stored in either the sheds or the warehouses of Downing & Co.; that after the rosin is delivered to Downing & Co. by the railroad, it is there graded, rolled off and put down in the open yard, not in the sheds or warehouses, and was thus stored outside of the sheds or warehouses at the time it was destroyed by fire. Thus, the rosin not being in or on a warehouse or shed of Downing & Co. at Brunswick, Georgia, it was not included within the policy issued by the defendant, and for it the defendant was not liable.

It seems, however, that the turpentine which was destroyed was in a shed upon the premises, and we think that for that turpentine the defendant was clearly liable. The referee has found that the loss by fire on the turpentine was $14,006.61. As these underwriters were liable for one-sixteenth of that sum, the liability under this policy would be $875.41, and the plaintiff is entitled to judgment against the defendant for his proportion of that amount.

The judgment should, therefore, be reversed, and judgment directed for the plaintiff against the defendant for his proportion of this sum of $875.41, the amount of this judgment to be ascertained upon the settlement of the judgment. The question of costs in the court below to be determined by the amount of the judgment, but without costs of this appeal.

VAN BRUNT, P. J., RUMSEY, PATTERSON and O'BRIEN, JJ., concurred.

Judgment reversed, without costs, and judgment ordered for plaintiff as directed in opinion.